UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LONNIE PROVOST,<br><br>Plaintiff,<br><br>vs.<br><br>JASON GANT, in his official capacity as Charles Mix County Auditor; and CHARLES MIX COUNTY, SOUTH DAKOTA,<br><br>Defendants. | 4:26-CV-04211-KES<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER |

On November 2, 2026, plaintiff, Lonnie Provost, sued Jason Gant, the Charles Mix County Auditor, and Charles Mix County, South Dakota, alleging a § 1983 claim against defendants for violating his First Amendment rights. Docket 1 at 10. Provost also alleges violations of South Dakota Constitution Article VI §§ 5, 19 and Article VII § 1. *Id.* at 11-12. Provost filed a motion for a temporary restraining order, requesting a TRO to restrain the government from prohibiting Provost and other voters from wearing Native Vote apparel at polling places or requiring voters to remove, cover, or turn the apparel inside out as a condition of voting. Docket 2 at 1. On November 3, 2026, the court held a motion hearing on the TRO. For the following reasons, the court grants Provost's motion for a temporary restraining order.

## BACKGROUND

According to the complaint, defendant's affidavit and declaration, and the testimony during the TRO hearing;

During the November 2024 general election, Native voters at the Wagner National Guard Armory in Charles Mix County were not allowed to vote while wearing Native Vote t-shirts. The shirts featured Native artwork and messages like, "Natives VOTE" and "Get Out the Native Vote."

Jason Gant, the Charles Mix County Auditor, directed poll workers to prevent approximately five to twenty voters from voting based on their apparel. Other voters removed or concealed their shirts and were allowed to vote.

Lonnie Provost is a Yankton Sioux Tribe member and a registered voter. His assigned polling place is the Wagner National Guard Armory in Wagner, South Dakota. Provost stated the right to vote is important to him to make sure those who are voted into office represent his values, opinions, and his people. Provost has worked for five years with an organization that supports leadership development in Native communities.

In 2024, Provost attempted to vote at his designated polling place in Wagner, South Dakota, while wearing a t-shirt depicting the words, "Natives VOTE." *See* Exhibit A. The polling station workers informed Provost he could not vote while wearing this t-shirt unless he concealed the shirt or turned it inside out. He refused to do so and was denied the right to vote. The poll workers told him Jason Gant was the person who gave them this instruction.

The Native American Rights Fund (NARF) sought corrective action during the election, but Gant maintained that the shirts were prohibited. After the election, NARF attempted to engage in dialogue with Secretary of State Monae L. Johnson to determine whether the Native voting shirts would be allowed in the 2026 election. NARF provided Johnson with photos of shirts bearing messages encouraging natives to vote. On October 27, 2026, Deputy Secretary of State Tom Deadrick cited SDCL § 12-18-3, declined to discuss permissible apparel, and claimed enforcement rested with the prosecutors. On October 28, 2026, NARF sought approval from Gant and Charles Mix County State's Attorney Cotton. Gant's affidavit states that on November 2, 2026, he trained his county's poll watchers to not turn away any voters due to *any* message on their t-shirt. Docket 9. Charles Mix County State's Attorney Steven Cotton declared that he would not prosecute anyone who wears a "Natives VOTE" t-shirt to the polling place on election day. Docket 10.

On November 2, 2026, Provost filed this action, seeking declaratory and injunctive relief based on federal and state constitutional claims against defendants. Docket 1. Provost intends to vote at the Wagner National Guard Armory on Tuesday, November 3, 2026, while wearing the same "Natives VOTE" shirt he wore in 2024. Provost fears history will repeat itself and poll workers will prohibit him from voting based on his clothing. He also fears prosecution under SDCL § 12-8-3. Because of his fears, Provost filed a motion for a temporary restraining order to ensure he can vote at his polling place while wearing his "Natives VOTE" t-shirt. Docket 2.

## LEGAL STANDARD

When ruling on a motion for a temporary restraining order or preliminary injunction, the court must consider (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other parties; (3) the likelihood of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)) ("[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for preliminary injunction."). When weighing these factors, "no single factor is in itself dispositive[.]" *Calvin Kelin Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987). "[A]ll of the factors must be considered to determine" whether the balance weighs toward granting the temporary restraining order. *Id.*

## DISCUSSION

### I. Likelihood of Success on the Merits

"Success on the merits has been referred to as the most important of the four factors." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). Probability of success on the merits in this context means that the moving party must show that is has "a 'fair chance of prevailing' " on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). A "fair chance of prevailing" does not necessarily mean a greater than fifty percent likelihood of prevailing on the merits of the claim. *Rounds*, 530 F.3d at 731-32. "At the early stage of a [temporary restraining order] motion,

the speculative nature of this particular inquiry militates against any wooden or mathematical application of the test." *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

Provost's First Amendment claim has a fair chance of prevailing on the merits. The First Amendment prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. South Dakota prohibits the display of "campaign posters, signs, or other campaign materials" or solicitation of "votes for or against any person or political party or position on question submitted or which may be submitted". SDCL § 12-8-3. This ban on expression within the protection of the First Amendment only applies to a polling place. Provost points the court to *Minn. Voters All. v. Mansky*, 585 U.S. 1 (2018), which provides the framework for the court's analysis. Docket 3 at 7.

In *Mansky*, the United States Supreme Court distinguished traditional public forums, designated public forums, and nonpublic forums. *Mansky*, 585 U.S. at 11-12. A polling place qualifies as a nonpublic forum and the government may impose some content-based restrictions on speech in these types of forums, "including restrictions that exclude political advocates and forms of political advocacy." *Id.* at 12. In a nonpublic forum, the government may regulate speech as long as it is "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* (quoting *Perry Ed. Assn. v. Perry Loc. Educators' Assn.*, 460 U.S. 37, 46 (1983)). The court agrees with Provost's framing of the issue as one narrower than that in *Mansky*. Docket 3 at 7. Thus, the question is whether South Dakota's ban

on political materials is reasonable in light of the purpose of the forum, which is voting, as-applied to Provost. *Mansky*, 585 U.S. at 13.

The United States Supreme Court invalidated Minnesota's prohibition on political apparel because it required election workers to make subjective judgments about the political significance of a voter's clothing. *Id.* at 17-19. Because the prohibition failed to provide "objective, workable standards," *id.* at 21, the ban could not constrain officials' discretion.

The South Dakota electioneering restriction defendants rely on to prohibit Provost's shirt raises similar concerns about subjective enforcement. Provost's "Natives VOTE" shirt supports civic engagement, not a specific party, candidate, or submitted question. Provost's claim is constrained to his particular shirt. Defendants' restriction is not sensibly connected to the polling place's purpose. *Mansky*, 585 U.S. at 14-16. In fact, Provost's shirt promotes voting attendance, the very purpose of the polling place. His apparel certainly does not interfere with the administration of voting.

Plaintiff also contends that defendants' policy restricting his apparel is not viewpoint neutral. Docket 3 at 10. Even if Gant's policies enforced through the poll workers were facially reasonable and neutral, they may still violate the First Amendment if applied to suppress a speaker's perspective. *See InterVarsity Christian Fellowship/USA v. Univ. of Iowa*, 5 F.4th 855, 864-65 (8th Cir. 2021). If Provost can establish polling workers discriminated based on Provost's perspective, the government must demonstrate that its restriction is

narrowly drawn and necessary to accomplish a compelling state interest. *Gerlich v. Leath*, 861 F.3d 697, 705 (8th Cir. 2017).

Provost's shirt supports the practice of voting without suggesting who or what to vote for. Defendants rely on SDCL § 12-18-3, an electioneering statute designed to restrict campaign messages, but Provost's message is not related to campaign advocacy and does not interfere with the purpose of the polling place or violate the electioneering statute. Thus, Provost's First Amendment claim is likely to succeed on the merits. Based on the available record, the court concludes that the first *Dataphase* factor favors granting the requested TRO.[1]

## II. Threat of Irreparable Harm

Under the second *Dataphase* factor, the movant must show he is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot e fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 319 (8th Cir. 2009). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

"[A] defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be

[1] Because the court concludes that Provost has shown a likelihood of success on the merits of his First Amendment claim in Count 1, it need not address his claims in Count 2 and Count 3 that defendants violated the South Dakota State Constitution.

expected to recur." *Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (citation and internal quotation marks omitted). "[A] party asserting mootness bears the formidable burden of showing it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *LaBatte v. Gangle*, 161 F.4th 1109, 1117 (8th Cir. 2025) (citation and internal quotation marks omitted). This mootness exception exists to prevent a defendant who has engaged in unlawful conduct from ceasing his behavior after suit only to pick up where he left off when the case is declared moot. *LaBatte*, 161 F.4th at 1117 (citation omitted). Gant has stated that he instructed the poll watchers at a training session on November 2, 2026, to not turn away wearing t-shirts with any message to vote. But nothing prevents Gant from changing his mind. Because Gant may give future instructions to poll workers today that could result in a violation of Provost's First Amendment rights, this case is not moot.

As discussed above, Provost has shown that his constitutional claim is likely to succeed on the merits. Once the polls close, the court cannot restore Provost's ability to vote in this election. *See League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 227 (4th Cir. 2014) (finding an injury to the right to vote an irreparable one because "once the election occurs, there can be no do-over and no redress[]"). Because "[t]here is no right more basic in our democracy than the right to participate in electing our political leaders[,]" Provost will likely suffer an irreparable harm if the court does not grant the requested TRO. *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014)

(plurality opinion). Thus, the court concludes that this factor supports granting preliminary relief in favor of Provost.

### III. Balance of the Hardships

The third *Dataphase* factor for obtaining a temporary restraining order requires a plaintiff to establish that his irreparable harm is greater than the hardship that a temporary restraining order would cause defendants. *Sturgis Area Chamber of Com. v. Sturgis Rally & Races, Inc.*, 99 F. Supp. 2d 1090, 1101 (D.S.D. 2000).

Provost's right to vote is central to the American political system. His requested order does not alter polling procedures, allow for partisan campaigning, or restrict administration of the election. Defendants remain free to enforce SDCL § 12-18-3 in a manner consistent with this opinion to prevent display of "campaign posters, signs, or other campaign materials" and any communication device used to "distract, interrupt, or intimate[] any voter or election worker[.]" SDCL § 12-18-3.

Plaintiff's requested relief minimally burdens defendants. "The extent of the harm if the [temporary restraining order] turns out to have been improperly granted is that [the county] defendants will have been wrongly prevented from carrying out their official duties." *Planned Parenthood Minn., N.D., S.D. v. Daugaard* , 799 F. Supp. 2d 1048, 1077 (D.S.D. 2011). And the official duties at issue here pertain to one voter, one shirt. In balancing plaintiff's First Amendment right to vote and freely express himself with a limited corrective instruction to poll workers, this factor weighs in Provost's favor. After balancing

the harm to the parties, the court finds that the harm to Provost plainly outweighs the risk of injury to defendants.

Thus, the court finds that this third factor favors granting the temporary restraining order.

**IV. Public Interest**

The court also concludes that the fourth *Dataphase* factor supports granting a TRO. The right to vote is necessary to "maintain the integrity of the democratic system." *Burdick v. Takushi*, 504 U.S. 428, 441 (1992). Thus, the court finds that this factor warrants granting the temporary restraining order.

**V. Bond**

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). But the court has discretion as to the amount of security required, if any. *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016). Courts have waived bond in free speech cases involving no harm to the defendant. *See Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (waiving the bond requirement because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public affected by the policy"). In this case, defendants have not requested

a bond or submitted any evidence regarding their likely damages. It is also unlikely defendants will incur costs or damages because of this temporary restraining order. Thus, the court waives the bond requirement.

## CONCLUSION

After weighing the *Dataphase* factors, the court concludes that Provost has established a likelihood that he will succeed on the merits of his First Amendment claim, will suffer irreparable harm in the absence of injunctive relief, and that the balance of harms and public interest weigh in favor of an injunction. Thus, the court grants plaintiff's motion for a temporary restraining order.

Based on the above, it is ORDERED:

1. Plaintiff's Emergency Motion for a Temporary Restraining Order is GRANTED as to Defendants Jason Gant, in his official capacity as Charles Mix County Auditor, and Charles Mix County, South Dakota.
2. Defendants, their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, are temporarily restrained from:
    a. Denying Plaintiff a ballot or access to voting at any Charles Mix County polling place because Plaintiff wears nonpartisan apparel expressing support for Native electoral participation, including apparel bearing the messages, "Native Vote," "Natives Vote," or "Get Out the Native Vote," subject to paragraph 3; and

b. Requiring Plaintiff to remove, cover, or turn the protected apparel inside out as a condition of receiving or casting a ballot.

3. Paragraph 2 protects shirts and other apparel expressing support for Native electoral participation that do not also advocate for or against a candidate, political party, or ballot measure. Differences in artwork or wording alone do not remove apparel from this protection. This order does not excuse compliance with otherwise lawful voter qualifications and voting procedures or authorize campaigning, intimidation, or disruptive conduct.
4. Immediately upon receiving actual notice of this order, Gant shall communicate its operative terms to the election superintendent and election workers at each Charles Mix County polling place. Gant shall instruct them that eligible voters must be permitted to receive and cast ballots while wearing the nonpartisan Native Vote apparel described above, subject to otherwise lawful voting requirements.
5. Within 30 minutes after receiving actual notice of this order, Gant shall confirm to Plaintiff's counsel that the instructions required by paragraph 4 have been communicated. Defendants shall promptly file written confirmation of compliance.
6. Plaintiff's counsel shall immediately transmit this order and the papers supporting the motion to Gant, the Charles Mix County State's Attorney, and any counsel known to represent Defendants, using the most expeditious available means. Plaintiff's counsel shall promptly

file a certification identifying the recipients, methods, and times of transmission.

7. The court fixes security under Federal Rule of Civil Procedure 65(c) at $0.00 because the limited relief ordered presents no demonstrated risk of compensable monetary loss to the Defendants.
8. This order takes effect immediately upon entry and expires upon completion of voting at all Charles Mix County polling places on November 3, 2026.

Dated November 3, 2026

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE